**In Re: DIRECTV EARLY CANCELLATION LITIGATION.**

**This document relates to: All Actions.**

**Case No. ML 09–2093 AG (ANx).**

United States District Court, C.D. California.

Sept. 7, 2010.

Alfredo Torrijos, Brian S. Kabateck, Richard L. Kellner, Kabateck Brown Kellner, LLP, Los Angeles, CA, Anthony L. Vitullo, Fee Smith Sharp and Vitullo LLP, Barbara Dawson, Snell & Wilmer, Phoenix, AZ, Beth E. Terrell, Terrell Marshall and Daudt, Seattle, WA, Blake M. Harper, Lindsay J. Foster, Sarah P. Weber, Hulett Harper Stewart LLP, San Diego, CA, Brian Morris Knowles, Knowles Law Firm, Summerville, SC, Dan Getman, Getman and Sweeney, New Paltz, NY, Deanna D. Dailey, Sprenger & Lang, Minneapolis, MN, Deirdre C. McGlinchey, Monroe, LA,

Douglas J. McNamara, Cohen Milstein Sellers & Toll, Douglas G. Thompson, Tracy D. Rezvani, Finkelstein Thompson LLP, Washington, DC, Eric Stoppenhagen, New York, NY, George K. Lang, Jamie E. Weiss, Jeffrey A. Leon, Michael J. Lotus, Paul M. Weiss, Freed & Weiss, Chicago, IL, J. Paul Gignac, Arias Ozzello and Gignac, Santa Barbara, CA, Jack E. Truitt, Covington, LA, James E. Cecchi, Carella Byrne Bain Gilfillan Cecchi Stewart and Olstein, Roseland, NJ, Jennifer E. Johnsen, Greenville, SC, Jonathan D. Selbin, Lieff Cabraser Heimann & Bernstein, New York, NY, Jonathan Shub, Seeger Weiss LLP, Philadelphia, PA, Joseph F. Rice, Motley Rice LLC, Mt. Pleasant, SC, Melissa D. Ingalls, Michael E. Baumann, Robyn Eileen Bladow, Shaun Paisley, Kevin M. Askew, Kirkland & Ellis LLP, Los Angeles, CA, Nimish R. Desai, Lieff Cabraser Heimann & Bernstein LLP, San Francisco, CA, Patrick L. Rocco, Shalov Stone Bonner and Rocco LLP, Morristown, NJ, Paul B. Mengedoth, Mengedoth Law Firm LLC, Scottsdale, AZ, Richard J. Burke, St. Louis, MO, Rosemary M. Rivas, Tracy Tien, Finkelstein Thompson LLP, San Francisco, CA, Scott E. Brady, Bohrer Law Firm, Baton Rouge, LA, William M. Sweetnam, Sweetnam LLC, Northbrook, IL, Andrew N. Friedman, Whitney R. Case, Cohen Milstein Sellers and Toll PLLC, Washington, DC, Carlos A. Gonzalez, Tracy L. Rhodes, Vaughan & Evans, Cartersville, GA, Christa L. Collins, St. Petersburg, FL, Joshua G. Konecky, Todd M. Schneider, Schneider Wallace Cottrell Brayton Konecky LLP, San Francisco, CA, Kevin Kleinpeter, Stephen Babcock, Babcock Law Firm, LLC, Baton Rouge, LA, Marc I. Machiz, Cohen Milstein Sellers & Toll PLLC, Philadelphia, PA, Michael E. Withey, Seattle, WA, Scott W. Weinstein, Morgan & Morgan, Ft. Myers, FL, William E. Applegate, IV, Yarborough Applegate LLP, Mt. Pleasant, SC, for DirecTV Inc. Early Cancellation Fee Marketing and Sales Practices Litigation.

## ORDER GRANTING IN PART AND DENYING IN PART DIRECTV'S MOTION TO COMPEL ARBITRATION WITH CERTAIN PLAINTIFFS AND DISMISS PLAINTIFFS' CLAIMS

ANDREW J. GUILFORD, District Judge.

In this Multidistrict Litigation ("MDL") case concerning early cancellation fees, Defendant DirecTV filed a Motion to Dismiss Claims in Plaintiffs' Second Amended Consolidated Class Action Complaint and to Compel Arbitration with the Arizona, Florida, Illinois, Louisiana, New York, Pennsylvania, South Carolina, and Virginia Plaintiffs ("Motion"). After considering all papers and arguments submitted, the Motion is GRANTED in part and DENIED in part.

To resolve the Motion to Compel and the Motion to Dismiss, this case requires a review of the consumer protection laws of eight states.

### BACKGROUND

The following facts are taken from Plaintiffs' Second Amended Consolidated Class Action Complaint ("SAC") and the Court accepts them to be true, as it must for motions to dismiss under Federal Rule of Procedure 12(b)(6).

DirecTV provides satellite television programming throughout the United States. (SAC ¶¶ 10, 37.) To allow its customers to access that service, DirecTV provides receivers and other equipment. (SAC ¶ 10.) DirecTV is incorporated and has its headquarters in California. (SAC ¶ 10.)

DirecTV has one of the lowest levels of customer "churn" in its competitive industry. (SAC ¶ 43.) "Churn" is "the turn-

over in customer base that occurs when subscribers switch service providers." (SAC ¶ 43.) To reduce churn, DirecTV imposes an Early Cancellation Fee ("Cancellation Fee"). (SAC ¶ 44.) The Cancellation Fee can be as high as $480. (SAC ¶ 44.)

After customers sign up for the DirecTV service, and after the receivers and other equipment are installed, DirecTV provides the customers with their terms and conditions. (SAC ¶¶ 49–52.) Customers are not told about the Cancellation Fee when they order the service. (SAC ¶¶ 52–53.)

After a DirecTV customer has initiated service, DirecTV provides the customer with a standardized consumer contract ("Customer Agreement") that is sent to the customer with its first monthly bill. (SAC ¶ 60.) The Customer Agreement does not include the programming commitment and the Cancellation Fee. (SAC ¶ 62.) The Customer Agreement includes the following choice of law clause:

> Applicable Law: The interpretation and enforcement of this Agreement shall be governed by the rules and regulations of the Federal Communications Commission, other applicable federal laws, and the laws of the state and local area where Service is provided to you. This agreement is subject to modification if required by such laws. Notwithstanding the foregoing, Section 9 shall be governed by the Federal Arbitration Act.

(SAC, Ex. 1, § 10(b) ("Choice of Law Clause").) The Customer Agreement also includes a section called "Resolving Disputes." (SAC, Ex. 1 § 9 ("Arbitration Clause").) In the Arbitration Clause, the Customer Agreement states that:

> [n]either you nor we shall be entitled to join or consolidate claims in arbitration by or against other individuals or entities, or arbitrate any claim as a representative member of a class or in a

private attorney general capacity. Accordingly, you and we agree that the JAMS Class Action Procedures do not apply to our arbitration. If, however, the law of your state would find this agreement to dispense with class arbitration unenforceable, then this entire [Arbitration Clause] is unenforceable.

(Arbitration Clause, § 9(d)(ii) ("Class Action Waiver").)

The Customer Agreement refers to a "separate programming commitment." (SAC ¶ 63.) That "separate programming commitment" comes to the customer after installation in a document called the "Equipment Lease Addendum." (SAC ¶ 63.) The Equipment Lease Addendum does not come to the customer with the Customer Agreement. (SAC ¶ 63.) Instead, the Equipment Lease Addendum is printed on the reverse side of a document titled "Installation/Service Satisfaction Checklist" ("Satisfaction Checklist"). (SAC ¶ 63, Ex. 2.) The Equipment Lease Addendum refers to the programming commitment and Cancellation Fee. (SAC ¶¶ 65–66, Ex. 2.)

DirecTV also imposes a commitment period on existing customers if they request a change in service, such as a different programming package or replacement equipment. (SAC ¶ 45.) If customers cancel during the new commitment period, they are assessed the Cancellation Fee. (SAC ¶ 45.) Customers are not told about the Cancellation Fee and commitment period before they change service or receive replacement equipment. (SAC ¶¶ 53, 63.) Often, these customers are not alerted to the existence of the Cancellation Fee until they attempt to cancel service. (SAC ¶ 54.) Other times, customers find out about the Cancellation Fee after they cancel the service and are billed or automatically charged for the service. (SAC ¶ 54.)

DirecTV imposes the Cancellation Fee regardless of the reason for early cancellation, such as moving to a new address, poor service, or the inability to establish service. (SAC ¶ 55.) The Cancellation Fee is also imposed if DirecTV cancels the service. (SAC ¶ 55.) For example, customers are charged the Cancellation Fee if DirecTV deems a customer a bad credit risk, or if a customer rejects a change in terms in the Customer Agreement. (SAC ¶ 55.)

DirecTV solicits customers to identify a bank account or credit card at the time of activation, and will not activate services unless either the information is provided or the customer gives a deposit. (SAC ¶ 57.) Without disclosing its intention to do so, DirecTV automatically withdraws the Cancellation Fee from cancelling customers' accounts. (SAC ¶ 57.) If the customer has not given DirecTV access to an account, DirecTV institutes collections efforts against the customer. (SAC ¶ 57.)

Based on these facts and others, Plaintiffs filed class action lawsuits. On October 9, 2009, the Joint Panel on Multidistrict Litigation ("JPML") transferred all the cases to this Court. On February 2, 2010, the Plaintiffs in the transferred cases sought leave to file a consolidated complaint, and this Court granted leave to do so. The Court also vacated motions to dismiss that were pending on that date, and granted several Plaintiffs' motion for reconsideration of this Court's previous order compelling arbitration. The Court did this because the Ninth Circuit had recently released its opinion in *Masters v. DirecTV, Inc.*, Case Nos. 08–55825 and 08–55830, —— Fed.Appx. ——, 2009 WL 4885132 (9th Cir. Nov. 19, 2009).

Because this is an MDL case, the case involves many Plaintiffs from many States. The Court now turns to a brief description of each Plaintiff.

Plaintiffs Annette Kahaly ("Kahaly"), John Mulea ("Mulea"), and Maureen Van Meter ("Van Meter") (collectively, the "California Plaintiffs") are all residents of California, ordered and received DirecTV service in California, and originally filed their lawsuits in California. (SAC ¶¶ 11–13.)

Plaintiff Christine Slakans ("Slakans" or the "Arizona Plaintiff") is a citizen of Arizona who ordered and received DirecTV service in Arizona. (SAC ¶ 14.) Plaintiff Slakans originally filed her lawsuit in Arizona.

Plaintiffs Joseph Lombardi ("Lombardi"), Kathleen O'Brien ("O'Brien"), Sandra Johannes ("Johannes"), and Ira Boshnack ("Boshnack") (collectively, the "Florida Plaintiffs") are all citizens of Florida who ordered and received DirecTV service in Florida. (SAC ¶¶ 15–18.) Plaintiffs Lombardi and Johannes originally filed their lawsuits in California. Plaintiffs Johannes and Boshnack originally filed in Florida.

Plaintiffs Renato Cappuccitti ("Cappuccitti") and David Ward ("Ward") (collectively, the "Georgia Plaintiffs") are citizens of Georgia who ordered and received DirecTV service in Georgia. (SAC ¶¶ 19–20.) The Georgia Plaintiffs originally filed in Georgia, and their cases are currently stayed pending the Eleventh Circuit's resolution of an appeal of the transferring district court's denial of DirecTV's motion to compel arbitration.

Plaintiff Christine Schuessler ("Schuessler" or "the Illinois Plaintiff") is a citizen of Illinois who ordered and received DirecTV service in Illinois. (SAC ¶ 21.) Plaintiff Schuessler originally filed in California.

Plaintiffs Valarie Thibodaux ("Thibodaux"), Rudolph Johnson ("Johnson"), Patrick Keller ("Keller"), Patricia Wilson ("Wilson"), and Dorothy Jones ("Jones")

(collectively, the "Louisiana Plaintiffs") are citizens of Louisiana who ordered and received DirecTV service in Louisiana. (SAC ¶¶ 22–26.) The Louisiana Plaintiffs originally filed in Louisiana.

Plaintiffs Sean and Tara Murray ("the Murrays" or "the New Jersey Plaintiffs") are married citizens of New Jersey who ordered and received DirecTV service in New Jersey. (SAC ¶ 27.) The Murrays originally filed in New Jersey.

Plaintiffs Paul Cannon ("Cannon") and Joshua Folkerth ("Folkerth") (collectively, the "New York Plaintiffs") are residents of New York who ordered and received DirecTV service in New York. (SAC ¶¶ 28–29.) Plaintiff Cannon originally filed his lawsuit in California, while Plaintiff Folkerth originally filed in New York.

Plaintiffs Carolyn Forbes ("Forbes") and Louis M. Wilson ("Wilson") ("collectively, the Oregon Plaintiffs") are married citizens of Oregon who ordered and received DirecTV service in Oregon. (SAC ¶ 30.) The Oregon Plaintiffs originally filed in Oregon.

Plaintiff Gary Smith ("Smith" or the "Pennsylvania Plaintiff") is a citizen of Pennsylvania who ordered and received DirecTV service in Pennsylvania. (SAC ¶ 31.) Plaintiff Smith originally filed in Pennsylvania.

Plaintiff Hoyt McBroom ("McBroom" or the "South Carolina Plaintiff") is a South Carolina citizen who ordered and received DirecTV service in South Carolina. (SAC ¶ 32.) Plaintiff McBroom originally filed his lawsuit in South Carolina.

Plaintiffs Roberta and Edward Pifer (the "Pifers" or the "Virginia Plaintiffs") are Virginia citizens who ordered and received DirecTV service in Virginia. (SAC ¶ 33.) The Pifers originally filed their lawsuit in California.

Plaintiffs Keith and Jana Harper (the "Harpers"), Tracy Twyman ("Twyman"), and Paul and Karen Brice (the "Brices") (collectively, the "Washington Plaintiffs") are Washington citizens who ordered and received DirecTV service in Washington. (SAC ¶¶ 34–36.) The Washington Plaintiffs all originally filed in Washington.

In the SAC, Plaintiffs allege 20 claims. Claims One through Three are for violations of federal law ("Federal Claims"), and are brought on behalf of putative nationwide classes. The Federal Claims are numbered as follows: (1) Declaratory relief under 28 U.S.C. §§ 2201, et seq., brought by all Plaintiffs; (2) violation of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693, brought by Plaintiffs Van Meter, O'Brien, and Johannes; and (3) violation of the Federal Communications Act ("FCA"), brought by all Plaintiffs.

Claims Four through Six are brought by all Plaintiffs on behalf of themselves and a putative nationwide class. These claims are based on violations of California consumer protection law (the "California Consumer Protection Claims"), and are numbered as follows: (4) Violation of California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; (5) violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Bus. & Prof. Code §§ 1750, et seq.; and (6) invalid liquidation damages in violation of Cal. Civil Code § 1671.

Plaintiffs assert claims Seven through Seventeen "in the alternative" and only "[t]o the extent that California law is ruled inapplicable to non-California resident Plaintiffs." (SAC ¶ 143.) These claims are based on the consumer protection laws of each Plaintiffs' home state, are brought based on a statewide putative class, and are numbered as follows: (7) Violation of Arizona's Consumer Fraud Act, §§ 44–1521, et seq., brought by the Arizona Plaintiff; (8) violation of Florida's Decep-

tive and Unfair Trade Practices Act, Florida Statute §§ 501.201, et seq., brought by the Florida Plaintiffs; (9) violation of Illinois Consumer Fraud and Deceptive Business Practices Act, Illinois Comp. Statute 505/1, brought by the Illinois Plaintiff; (10) violation of Louisiana's Unfair Trade Practices and Consumer Protection Act, brought by the Louisiana Plaintiffs; (11) violation of New Jersey Consumer Fraud Act, New Jersey Annotated §§ 56:8–1, et seq., brought by the New Jersey Plaintiffs; (12) violation of Section 349 of New York General Business Law: Deceptive Acts and Practices, brought by the New York Plaintiffs; (13) violation of Oregon Unlawful Trade Practices Act, Ore.Rev.Stat. §§ 646.605, et seq., brought by the Oregon Plaintiffs; (14) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, brought by the Pennsylvania Plaintiff; (15) violation of South Carolina Code Ann. § 36–2–718, brought by the South Carolina Plaintiff; (16) violation of Virginia's Consumer Protection Act, Vir. Code §§ 50.1–196, et seq., brought by the Virginia Plaintiffs; and (17) violation of Washington's Consumer Protection Act, RCW §§ 19.89.010, et seq., brought by the Washington Plaintiffs.

Finally, claims Eighteen through Twenty are for violations of Common Law (the "Common Law Claims"). The Common Law Claims are brought on behalf of a putative nationwide class, and are numbered as follows: (18) Money had and received, brought by all Plaintiffs except Plaintiff Cappuccitti; (19) unjust enrichment, brought by all Plaintiffs except Plaintiff Cappuccitti; and (20) relief of unlawful penalties, brought by all Plaintiffs.

DirecTV now moves under 9 U.S.C. § 4 to compel arbitration of Plaintiffs Slakans, Lombardi, O'Brien, Boshnack, Johannes, Schuessler, P. Wilson, Keller, Johnson, Jones, Cannon, Folkerth, Smith, McBroom, and the Pifers. DirecTV also

moves under Rule 12(b)(6) to: (1) Dismiss all California Consumer Protection Claims brought by the non-California Plaintiffs; (2) dismiss Plaintiffs' claims premised on the early cancellation fee being an unlawful liquidated damages provision; (3) dismiss Plaintiffs' EFTA claim; (4) dismiss Plaintiffs' FCA claim; (5) Dismiss Plaintiffs' common law claims for unjust enrichment and "Relief of Unlawful Penalties"; (6) dismiss the money had and received claims asserted by Plaintiffs McBroom, Slakans, Smith, Boshnack, and Twyman; (7) dismiss Plaintiff McBroom's claim under the South Carolina Commercial Code; and (8) dismiss the Louisiana Plaintiffs' LUTPA claim.

After DirecTV filed its Motion, Plaintiffs Keller, Johnson, Thibodaux, and Cannon voluntarily dismissed their claims. Accordingly, the Court will not address the Motion as to those Plaintiffs.

## PRELIMINARY MATTERS

The parties submitted multiple evidentiary objections. In motions with numerous objections, "it is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised." *Doe v. Starbucks, Inc.,* No. SACV 08–0582 AG (CWx), 2009 WL 5183773, at *1 (C.D.Cal. Dec. 18, 2009). This is especially true where, as here, "many of the objections are boilerplate recitations of evidentiary principles or blanket objections without analysis applied to specific items of evidence." *Id.* The Court did not rely on most of the evidence under objection. To the extent that it did rely on evidence, the Court relied only on admissible evidence.

## ANALYSIS

Because federal courts are courts of limited jurisdiction, the Court first turns to the issue of whether this Court has subject matter jurisdiction here. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 93–95,

118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (subject matter jurisdiction must be "established as a threshold matter"). The Court must then turn to DirecTV's Motion to Compel. *See Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076, 1079 (9th Cir. 1986); *Buckley v. Gallo Sales Co.*, 949 F.Supp. 737, 739 (N.D.Cal.1997). Finally, the Court decides DirecTV's Motion to Dismiss under Rule 12(b)(6).

## 1. SUBJECT MATTER JURISDICTION

The Court finds that exercising subject matter jurisdiction here is proper under the Class Action Fairness Act of 2005 ("CAFA"). Recently, the Eleventh Circuit held that original jurisdiction over a class action under CAFA requires that at least one plaintiff allege an amount in controversy over $75,000. *Cappuccitti v. DirecTV, Inc.*, 611 F.3d 1252, 1256 (11th Cir. July 19, 2010). The Court disagrees with that holding for the reasons that follow in Section 1.3. But before delving into the reasoning of the *Cappuccitti* decision, the Court gives a brief overview in Section 1.1 of mass and class actions under CAFA and in Section 1.2 examines whether *Cappuccitti* is binding on this Court.

### 1.1 Mass and Class Actions under CAFA

CAFA "expands federal jurisdiction over class actions and facilitates their removal." *Cappuccitti*, 611 F.3d at 1255 (quoting *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1329 (11th Cir.2006)). Before CAFA, class and mass actions could only be removed if all class members were completely diverse from all defendants. Now, under CAFA, only minimal diversity is required if certain other requirements are met.

Two types of actions can be filed in (or removed to) federal courts under CAFA: mass actions and class actions. The CAFA jurisdiction rules are slightly different depending on which type of action

applies. The distinction is important here because the *Cappuccitti* court extrapolated a new class action rule from the mass action rules.

■ A class action is "any civil action filed in a district court of the United States under rule 23 of the Federal Rules of Civil Procedure or any civil action that is removed to a district court of the United States that was originally filed under a State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representatives as a class action." 28 U.S.C. § 1711(2). A mass action is "any civil action (except a civil action within the scope of section 1711(2)) in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. § 1332(d)(11)(B)(i). In other words, a class action is a representative action where a named plaintiff or plaintiffs represents a large number of similarly situated people who are not a part of the lawsuit, while a mass action is not representative because every plaintiff is named in the case.

CAFA provides three explicit statutory requirements for original jurisdiction over class actions. The first two requirements are found in 28 U.S.C. § 1332(d)(2) and deal with the minimum aggregate amount in controversy and minimal diversity:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—
>
> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant;
>
> (B) any member of a class of plaintiffs is a foreign state or a citizen or subject of

a foreign state and any defendant is a citizen of a State; or

(C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

28 U.S.C. § 1332(d)(2). The third requirement is that there must be at least 100 members in the putative class. 28 U.S.C. § 1332(d)(5).

■ The requirements for mass actions are similar. A mass action must meet the same three requirements as a class action. But 28 U.S.C. § 1332(d)(11)(B)(i) imposes an additional requirement on mass actions:

[t]he term "mass action" means any civil action ... in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a).

*Id.* The reference to subsection (a) is important here. The "jurisdictional amount requirements under subsection (a)" states that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000." 28 U.S.C. § 1332(a). So under the explicit terms of 28 U.S.C. § 1332, jurisdiction over a mass action doesn't exist except "over those plaintiffs" whose amount in controversy is more than $75,000. Some courts have interpreted "only over those plaintiffs" to mean that at a minimum "at least one" of the plaintiffs must meet the $75,000 requirement for removal, but this distinction is not relevant to the issues here. *See Lowery v. Alabama Power Co.,* 483 F.3d 1184, 1204–05 (11th Cir.2007); *Abrego Abrego v. Dow Chemical Co.,* 443 F.3d 676, 689 (9th Cir. 2006) ("[W]e do conclude ... that the case cannot go forward unless there is at least one plaintiff whose claims can remain in federal court.") (emphasis in original).

With this understanding of the CAFA requirements for jurisdiction over mass and class actions, the Court now turns to whether it is required to defer to the Eleventh Circuit's opinion in *Cappuccitti* in determining whether it can exercise jurisdiction.

## 1.2 Whether *Cappuccitti* Is Binding on this Court

This Court has been awaiting a decision in *Cappuccitti v. DirecTV, Inc.,* one of the cases in this MDL, which was pending before the Court of Appeals for the Eleventh Circuit. The issue on appeal in *Cappuccitti* was whether the lower court correctly declined to compel arbitration. On July 19, 2010, an opinion was entered in *Cappuccitti.* Rather than addressing the arbitration issue on appeal, the Eleventh Circuit sua sponte dismissed the case for lack of subject matter jurisdiction. The Eleventh Circuit held that "in a CAFA action originally filed in federal court, at least one of the plaintiffs must allege an amount in controversy that satisfies the current congressional requirement for diversity jurisdiction provided in 28 U.S.C. § 1332(a)," which is $75,000. *Cappuccitti,* 611 F.3d at 1256.

The Court recognizes that the damages claims in *Cappuccitti* are exactly the same as the other damages claims in this case. Specifically, the plaintiffs in *Cappuccitti* sued DirecTV "seeking the recovery ... of the fees DirecTV charged its subscribers for cancelling their subscriptions prior to the subscriptions' expiration." *Id.* at 1253. "The fees ranged from $175 to $480." *Id.* Plaintiffs here seek the same relief, and the same maximum amount of individual damages are at issue. (SAC ¶ 44.) Thus, like the plaintiffs in *Cappuccitti,* no individual class member has alleged an

amount in controversy that "satisfies the current congressional requirement for diversity jurisdiction provided in 28 U.S.C. § 1332(a)." If this Court applied the rule announced in *Cappuccitti*, it would have to dismiss or remand all of the cases in this MDL.

■ But this Court is not bound by *Cappuccitti*. "When a transferee court receives a case from the MDL Panel, the transferee court applies the law of the circuit in which it is located to issues of federal law." *In re Gen. Am. Life Ins. Co. Sales Practices Litig.*, 391 F.3d 907, 911 (8th Cir.2004); *In re Korean Air Lines Disaster*, 829 F.2d 1171, 1176 (D.C.Cir. 1987), *aff'd on other grounds sub nom. Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989); *Newton v. Thomason*, 22 F.3d 1455, 1460 (9th Cir.1994). In *Korean Air*, then Circuit Judge Ruth Bader Ginsburg explained why this is so:

> Applying divergent interpretations of the governing federal law to plaintiffs, depending solely upon where they initially filed suit, would surely reduce the efficiencies achievable through consolidated preparatory proceedings. Indeed, because there is ultimately a single proper interpretation of federal law, the attempt to ascertain and apply diverse circuit interpretations simultaneously is inherently self-contradictory. Our system contemplates differences between different states' laws; thus a multidistrict judge asked to apply divergent state positions on a point of law would face a coherent, if sometimes difficult, task. But it is logically inconsistent to require one judge to apply simultaneously different and conflicting interpretations of what is supposed to be a unitary federal law.

829 F.2d at 1175–76. Thus, the law of a transferor circuit "merits close consideration, but does not have stare decisis effect in a transferee forum situated in another circuit." *Id.* at 1176. This principle is well established. "[C]ircuit and district courts, including the Ninth Circuit, have uniformly applied the law of the transferee circuit in MDL proceedings involving federal law." *In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 104 (C.D.Cal.2007) (collecting cases). So the Court will apply Ninth Circuit precedent while still giving the case law of other circuits close consideration and striving to avoid conflicts if possible. *See Korean Air*, 829 F.2d at 1176 (stating that "federal courts spread across the country owe respect to each other's efforts and should strive to avoid conflicts").

Accordingly, *Cappuccitti* is persuasive authority to the extent that it does not conflict with Ninth Circuit precedent and to the extent that the Court finds its reasoning sound. *See In re Subpoena Served on Cal. Pub. Utils. Comm'n*, 813 F.2d 1473 (9th Cir.1987) (declining "to follow [a] rule of the Eleventh Circuit because we find the reasoning and authority offered to support it unpersuasive"); *see generally Hart v. Massanari*, 266 F.3d 1155, 1172–73 (9th Cir.2001) ("[A]n opinion of our court is binding within our circuit, not elsewhere in the country. The courts of appeals, and even the lower courts of other circuits, may decline to follow the rule we announce—and often do. This ability to develop different interpretations of the law among the circuits is considered a strength of our system.").

### 1.3 Whether this Court Should Follow *Cappuccitti*

■ As noted, the Court will only follow *Cappuccitti* to the extent that it does not conflict with Ninth Circuit precedent and that its reasoning is sound. For the reasons that follow, this Court will not follow the *Cappuccitti* rule.

### 1.3.1 The Ninth Circuit has addressed the merits of CAFA class actions without discussing a $75,000 requirement

The *Cappuccitti* court acknowledged that "[n]o court of appeals case of which we are aware has expressly held that at least one plaintiff must meet the [$75,000] requirement to maintain an original CAFA action." *Cappuccitti*, 611 F.3d at 1256. While the Ninth Circuit has not directly addressed the issue raised in *Cappuccitti*, it has found that subject matter under CAFA was proper in putative class actions where the individual damages were likely less than $75,000. It did so without discussing a $75,000 requirement. *See, e.g., Birdsong v. Apple, Inc.*, 590 F.3d 955, 957 n. 1 (9th Cir.2009) ("[t]he district court had original jurisdiction" under CAFA when individual damages were limited to the cost of an iPod); *Shroyer v. New Cingular Wireless Services, Inc.*, 498 F.3d 976, 981 (9th Cir.2007) (district court had subject matter jurisdiction under CAFA in putative class action concerning cellular telephone contracts). Because the Ninth Circuit hasn't addressed the issue of an amount in controversy requirement for at least one plaintiff, the *Cappuccitti* decision does not directly conflict with the reasoning in any Ninth Circuit decision.

But the *Cappuccitti* decision does directly conflict with the *results* of Ninth Circuit decisions. It is unlikely that the Ninth Circuit missed this issue in each and every CAFA case that has come before it in the last five years. A more likely scenario is that the Ninth Circuit didn't address the issue because the plain words of the statute do not require any minimum amount in controversy as to individual plaintiffs in class actions. To resolve the conflicts between the results in *Cappuccitti* and the results in Ninth Circuit cases, the Court now turns to the *Cappuccitti* order to determine whether the reasoning is sound and whether the Court should follow it.

### 1.3.2 The dog that didn't bark

"Is there any point to which you would wish to draw my attention?"

"To the curious incident of the dog in the night-time."

"The dog did nothing in the night-time."

"That was the curious incident," remarked Sherlock Holmes.

Sir Arthur Conan Doyle, *Silver Blaze*, in *The Complete Sherlock Holmes, Volume 2* 399, 413 (Spark Educational Pub. Ed. 2003) (1892).

The curious incident here is the absence of an explicit requirement that an individual Plaintiff must meet any minimum amount in controversy for class actions. The incident is curious because Congress *did* explicitly require it for mass actions. 28 U.S.C. § 1332(d)(11)(B)(i).

The confusion in *Cappuccitti* seems to arise from the conflation of mass actions and class actions. As noted in Section 1.1, Section 1332(d)(11)(B)(i), combined with Section 1332(a), requires at least one plaintiff with more than $75,000 in controversy in mass actions. There are no corresponding sections for class actions.

The *Cappuccitti* court did not address the fact that Section 1332 explicitly requires a mass action plaintiff with more than $75,000 in controversy while remaining silent on whether the requirement applies to class actions. Instead, the court compared the requirements for mass and class actions, and found that "many of the requirements for an original CAFA action resemble those for a mass action removable under CAFA." 611 F.3d at 1256. The court then cited *Lowery v. Alabama Power Co.*, 483 F.3d 1184 (11th Cir.2007), for the premise that a minimum amount in controversy for an individual plaintiff is an unsettled question of law. *Cappuccitti*, 611 F.3d at 1256.

The *Cappuccitti* court was correct that the *Lowery* opinion states that it "need not decide today whether . . . the claims of at least one of the plaintiffs [must] exceed $75,000." *Id.* (citing *Lowery,* 483 F.3d at 1206). But *Lowery* was a *mass* action, not a *class* action.

The *Cappuccitti* court went on to note that:

"[T]he $75,000 requirement expressly applies in actions removed under CAFA, 28 U.S.C. § 1332(d)(11)(B)(i), and we can think of no reason why Congress would have intended the requirement in the context of CAFA removal jurisdiction but not CAFA original jurisdiction. Holding otherwise would cause a nonsensical result: a case in which a plaintiff claimed less than $75,000 in controversy in state court could not enter federal court by removal . . . but could, if the plaintiff chose, be brought in federal court under CAFA original jurisdiction."

*Cappuccitti,* at 1257. If Section 1332(d)(11)(B)(i) dealt with the removal of class actions, the result would be "nonsensical." But it doesn't. Section 1332(d)(11)(B)(i) concerns only mass actions. And regardless of whether a class action is removed or originally filed, nothing in CAFA explicitly states that a class member must meet the minimum jurisdictional amount.

"[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Nken v. Holder,* 556 U.S. ——, ——, 129 S.Ct. 1749, 1759, 173 L.Ed.2d 550 (2009) (citations omitted). The lack of reference in Section 1332 to the minimum jurisdictional amount for class actions is a curious incident indeed. If Congress intended that the individual minimum jurisdiction

amount apply in class actions, it would have included language specifying the minimum, as it did with mass actions.

This Court finds that the *Cappuccitti* decision was misguided in both the reasoning and result. Thus, the Court will not give weight to the rule set forth in *Cappuccitti.*

### 1.4 Conclusion

In sum, the Court disagrees with the reasoning and result in *Cappuccitti.* The only three requirements for CAFA jurisdiction over class actions are that: (1) the total amount in controversy is greater than $5 million; (2) the putative class contains at least 100 members; and (3) there is minimal diversity. There is no dispute that these three requirements are met here, so this Court may exercise subject matter jurisdiction.

### 2. MOTION TO COMPEL ARBITRATION

DirecTV brings its Motion to Compel Arbitration under 9 U.S.C. § 4 against Plaintiffs Slakans, Lombardi, O'Brien, Boshnack, Johannes, Schuessler, P. Wilson, Jones, Folkerth, Smith, McBroom, and the Pifers. Section 4 provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." DirecTV bases its Motion to Compel on the Arbitration Clause in the Customer Agreement. Plaintiffs argue that enforcement of the Arbitration Clause is against public policy and should not be enforced under various state laws.

To determine whether the Arbitration Clause is enforceable as to each Plaintiff, the Court must employ a two step analysis.

First, the Court must decide which forum's laws apply. Second, after the choice of law determination, the Court must decide whether each forum would enforce the Arbitration Clause.

■ In the first step, this Court would normally apply the choice of law rules of California because this Court sits in the Central District of California. But here, the Court must apply the choice of law rules of the state where each Plaintiff originally filed before it was transferred here by the JPML. *In re Nucorp Energy Sec. Litig.*, 772 F.2d 1486, 1492 (9th Cir.1985). In Section 2.1.1, the Court determines that as to the Plaintiffs who originally filed in California, under California choice of law rules, California law applies to the enforcement of the Arbitration Clause. As to the Plaintiffs who originally filed in their home states, the parties agree that the home state's laws should be applied to the enforcement of the Arbitration Clause. (*See* Opp'n 48:13–23.)

The second step is to determine whether each forum would enforce the Arbitration Clause. In Section 2.1.2, the Court first examines the enforceability of the Arbitration Clause as to the Plaintiffs who originally filed in California, and finds that the Arbitration Clause is not enforceable as to those Plaintiffs. Next, in Section 2.2, for Plaintiffs who originally filed in other states, the Court examines the choice of law rules in each of their states, and finds that the Arbitration Clause is enforceable as to the Louisiana Plaintiffs, the South Carolina Plaintiff, and New York Plaintiff Folkerth, but not enforceable as to the remaining Plaintiffs.

**2.1 Whether Plaintiffs Who Originally Filed In California Are Subject To The Arbitration Clause**

■ Of the Plaintiffs against whom DirecTV seeks to compel arbitration, Florida Plaintiffs O'Brien and Lombardi, Illinois Plaintiff Schuessler, and Virginia Plaintiffs the Pifers all originally filed their lawsuits in California. Accordingly, the Court applies California choice of law rules to decide whether California law applies in the determination of whether these Plaintiffs should be compelled to arbitrate. The Court finds that under California law, the Arbitration Clause at issue here would not be enforceable.

**2.1.1 California choice of law rules for enforcing arbitration clauses**

On November 19, 2009, the Ninth Circuit released its opinion in *Masters v. DirecTV, Inc.*, Case Nos. 08–55825 and 08–55830, —— Fed.Appx. ——, 2009 WL 4885132 (9th Cir. Nov. 19, 2009) ("*Masters*"), *en banc hear'g denied*, Case No. 08–55825 (9th Cir. Jan 11, 2010). In *Masters*, the Ninth Circuit affirmed Judge Florence–Marie Cooper's denial of DirecTV's motion to compel arbitration in a case very similar to this one. The *Masters* decision concerned the exact Defendant, Arbitration Clause, and Class Action Waiver at issue here. The *Masters* Court held that "California has a materially greater interest than Montana or Georgia in the current dispute because California is home to the sole defendant and because the appellees assert claims under California law alone." *Id.* at ——, at *1. The court reasoned that "[b]ecause the current dispute is brought as a nationwide class action, neither Montana nor Georgia can claim any special interest in having its laws apply to this dispute; each state in which putative class members reside, whether it is California, Montana, or Georgia, has the same interest in protecting its own residents." *Id.* (citing *Discover Bank v. Superior Court*, 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100 (2005)).

The *Masters* case is unpublished. An unpublished decision by the Ninth Circuit issued after January 1, 2007 is binding authority only when relevant under the doctrine of the law of the case or rules of claim preclusion or issue preclusion. Ninth Cir. Rule 36–3(a). The parties disagree as to whether *Masters* requires the Court to apply California law in this case. Plaintiffs argue that nonmutual offensive issue preclusion should apply, and that *Masters* is therefore binding here, while DirecTV argues that the facts in *Masters* are different and that issue preclusion should not apply. The Court finds that issue preclusion does apply here. The Court further finds that even if issue preclusion does not apply, the reasoning of both *Masters* and the underlying district court opinions are persuasive and should be applied here.

■ A federal court sitting in diversity must apply the issue preclusion law of the state where it sits, so California issue preclusion law will apply to these Plaintiffs. *Jacobs v. CBS Broad., Inc.*, 291 F.3d 1173, 1177 (9th Cir.2002) (citing *Pardo v. Olson & Sons, Inc.*, 40 F.3d 1063, 1066 (9th Cir.1994)). California looks to federal standards in determining the preclusive effect of a prior federal court judgment. *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir.1982).

■ Under federal law, offensive nonmutual issue preclusion applies if: "(1) there was a full and fair opportunity to litigate the identical issue in the prior action; (2) the issue was actually litigated in the prior action; (3) the issue was decided in a final judgment; and (4) the party against whom issue preclusion is asserted was a party or in privity with a party to the prior action." *Syverson v. IBM*, 472 F.3d 1072, 1078–79 (9th Cir.2007) (citations omitted). If these elements are met, the Court may still decline to grant preclusive effect if certain "indices of unfairness" are present, in particular whether:

(1) "the plaintiff had the incentive to adopt a 'wait and see' attitude in the hope that the first action by another plaintiff would result in a favorable judgment" which might then be used against the losing defendant; (2) the defendant had the incentive to defend the first suit with full vigor, especially when future suits are not foreseeable; (3) one or more judgments entered before the one invoked as preclusive are inconsistent with the latter or each other, suggesting that reliance on a single adverse judgment would be unfair; and, (4) the defendant might be afforded procedural opportunities in the later action that were unavailable in the first "and that could readily cause a different result."

*Syverson*, 472 F.3d at 1079 (*quoting Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 330–31, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)).

Here, first, DirecTV had a "full and fair opportunity to litigate the identical issue" in *Masters. Syverson*, 472 F.3d at 1078. There, as here, out-of-state plaintiffs sought to apply California law to the enforceability of the exact same Arbitration Clause and Class Action Waiver at issue in this case.

DirecTV argues that because plaintiffs in *Masters* were from Montana and Georgia, as opposed to the other states represented by Plaintiffs here, the issues were not "identical." But the Ninth Circuit was clear that California has a decidedly strong interest in litigation against DirecTV and in the enforceability of class action waivers, and that all other states in a nationwide class action "in which putative class members reside" had lesser and indistinguishable interests. *Masters*, at ——, at *1. There is nothing in the *Masters* opinion indicating that Montana and Georgia were

any different than any other state. *Id.* In fact, the opinion stated that "each state in which putative class members reside, whether it is California, Montana, or Georgia, has the same interest in protecting its own residents." *Id.* Although the court specifically listed California, Montana, and Georgia, the court also referred to "each state in which putative class members reside." *Id.* The putative classes were nationwide classes. The fact that different states were involved does not defeat the fact that these are identical issues. DirecTV's argument fails.

DirecTV also argues that the plaintiffs in *Masters* only brought California claims, while the Plaintiffs here bring additional consumer protection claims based on the law of their own home states. But Plaintiffs plead California Consumer Protection Claims first, and plead their own home state laws only "in the alternative," and only "[t]o the extent that California law is ruled inapplicable to non-California resident Plaintiffs." (SAC ¶ 143.) So long as California law is applicable, which it is here, the claims based on Plaintiffs' home state laws are rendered moot. Thus, this argument fails as well, and Plaintiffs have established the first element of claim preclusion.

The second element is whether the "issue was actually litigated" in *Masters*. *Syverson*, 472 F.3d at 1078. Here, the parties do not contest that the issue was fully litigated before Judge Cooper and again in the Ninth Circuit.

As to the third element, the issue here "was decided in a final judgment." *Id.* at 1078. This element requires only that "the court's decision on the issue as to which preclusion is sought is final." *Id.* at 1079. An appellate order affirming the district court order strengthens the basis for issue preclusion because preclusive effect is given to "issues ... resolved by appeal prior to final judgment." *Id.* at

1079 (*citing* 18A Wright, Miller & Cooper, Federal Practice and Procedure § 4434 (2002)).

The fourth element is whether DirecTV was "a party to the prior action." *Syverson*, 472 F.3d at 1078. Clearly, it was.

█ Finally, there are no "indices of unfairness" that advise against granting preclusive effect to the Ninth Circuit's Order. *Id.* Plaintiffs promptly raised the issue, even before the *Masters* decision was decided, so they did not adopt a "wait and see" attitude. Second, DirecTV had every incentive to defend against *Masters* with "full vigor." *Syverson*, 472 F.3d at 1079. As here, *Masters* involved nationwide consumer class actions, giving DirecTV ample incentive to aggressively litigate the cases. And DirecTV knew that it faced numerous similar consumer class actions in California and elsewhere raising identical arbitration issues. Third, outside of the vacated order in this case, there is no prior judgment from a California action holding that DirecTV's arbitration agreement is governed by a foreign plaintiff's home state and is therefore enforceable. As such, it is not unfair to hold DirecTV to the Ninth Circuit's Order. Finally, because *Masters* and this case are proceeding in the same forum, DirecTV will not be "afforded procedural opportunities" in this case that were previously unavailable to it. *See Syverson*, 472 F.3d at 1079.

Thus, all four elements of the offensive nonmutual issue preclusion analysis are met, and there are no countervailing factors that would counsel against granting preclusive effect to *Masters*. Accordingly, California law applies to the Arbitration Clause interpretation as to those Plaintiffs that filed their lawsuits in California.

Further, even if, as DirecTV argues, the issues were not "identical" because the *Masters* plaintiffs came from different states than the Plaintiffs here, the analysis

comes to the same result. This Court finds that the Ninth Circuit's analysis in *Masters* is persuasive and directly applicable here.

Accordingly, the Court applies California law in determining the enforceability of the Arbitration Clause and Class Action Waiver as to the non-California Plaintiffs that filed their lawsuits in California.

### 2.1.2 Enforceability of the Arbitration Clause as to Plaintiffs who filed in California

 California courts consistently invalidate arbitration clauses that would shield the party with superior bargaining strength from liability under California's robust consumer protection laws. *See, e.g., Szetela v. Discover Bank,* 97 Cal. App.4th 1094, 118 Cal.Rptr.2d 862 (2002); *Discover Bank,* 36 Cal.4th at 148, 30 Cal. Rptr.3d 76, 113 P.3d 1100. To determine whether a class action waiver is unconscionable in the consumer setting, the Court must consider a three-part inquiry established by the California Supreme Court in *Discover Bank,* 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100. Under this inquiry, courts must determine:

> (1) whether the agreement is a "consumer contract of adhesion" drafted by a party that has superior bargaining power; (2) whether the agreement occurs "in a setting in which disputes between the contracting parties predictably involve small amounts of damages"; and (3) whether "it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money."

*Shroyer,* 498 F.3d at 983 (quoting *Cohen v. DirecTV,* 142 Cal.App.4th 1442, 1451–53, 48 Cal.Rptr.3d 813 (2006) and *Klussman v. Cross Country Bank,* 134 Cal.App.4th 1283, 1297, 36 Cal.Rptr.3d 728 (2005)).

Both the California Court of Appeal in *Cohen* and Judge Cooper in *Masters/Mur-*

*phy* held that the application of the three factors establishes unconscionability as to the precise Arbitration Clause at issue here. *Cohen,* 142 Cal.App.4th at 1451–53, 48 Cal.Rptr.3d 813; *Masters/Murphy.* In fact, DirecTV does not move to compel the California Plaintiffs to arbitrate because "DirecTV has conceded that the arbitration provision would not be enforceable under California law." (Opp'n 15:19–20 (citing *In re DirecTV Cancellation Fee Litigation,* Dkt. No. 84 at 9).)

The Court agrees that the Arbitration Clause and Class Action Waiver would be unconscionable under the three-prong California unconscionability analysis. Accordingly, DirecTV's Motion to Compel is DENIED as to Florida Plaintiffs O'Brien and Lombardi, Illinois Plaintiff Schuessler, and Virginia Plaintiffs the Pifers, who all originally filed their lawsuits in California.

### 2.2 Whether Plaintiffs· Should Be Compelled To Arbitrate Under The Law Of The State Where They Each Originally Filed Their Lawsuits

Because the parties agree that the home state's laws should be applied to those Plaintiffs who filed in states other than California, the Court need not make a choice of law determination as to those Plaintiffs. Accordingly, the Court next determines whether the Arbitration Clause would be enforced against Plaintiffs under the laws of their home states.

### 2.2.1 Arizona Plaintiff Slakans

 In Arizona, procedural unconscionability is concerned with "unfair surprise,[ ] fine print clauses, mistakes or ignorance of important facts or other things that means bargaining did not proceed as it should[,]" while substantive unconscionability concerns "the actual terms of the contract and examines the relative fairness of the obligations assumed." *Maxwell v.*

*Fidelity Fin. Servs., Inc.*, 184 Ariz. 82, 907 P.2d 51, 57–58 (1995). "[A] claim of unconscionability can be established with a showing of substantive unconscionability alone[.]" *Id.* at 57–58.

▮ Contract terms are substantively unconscionable when they are "so one-sided as to oppress or unfairly surprise an innocent party," when there is "an overall imbalance in the obligations and rights imposed by the bargain," or when there is "significant cost-price disparity." *Maxwell v. Fidelity Financial Services, Inc.*, 184 Ariz. 82, 89, 907 P.2d 51 (1995). Arizona courts have yet to address the narrow question of whether class action waiver in a contract of adhesion is substantively unconscionable. *See Hutcherson v. Sears Roebuck & Co.*, 342 Ill.App.3d 109, 276 Ill.Dec. 127, 793 N.E.2d 886, 894 (2003) ("Arizona courts have not addressed [whether arbitration provision impermissibly bars consumers from pursuing their rights in a class action], so we look to other jurisdictions for guidance."); *Vigil v. Sears Nat'l Bank*, 205 F.Supp.2d 566, 573 (E.D.La.2002) (relying on cases from other jurisdictions because Arizona had not yet addressed the issue of whether class action waivers are unconscionable). Arizona courts are directed to "look approvingly to the . . . laws of California, especially when interpreting a similar or identical statute." *Moore v. Browning*, 203 Ariz. 102, 50 P.3d 852, 859 (Ariz.App.Ct.2002) (citing *State v. Vallejos*, 89 Ariz. 76, 358 P.2d 178, 182 (1960)); *see also Vallejos*, 358 P.2d at 182 ("we will follow the California cases in so far as their reasoning is sound"). Thus, the soundly reasoned California opinions that hold the Arbitration Clause and Class Action Waiver unconscionable here are instructive.

▮ DirecTV's class action waiver is one-sided because "[a]lthough styled as a mutual prohibition on representative or class actions, it is difficult to envision the circumstances under which . . . [DirecTV] . . . might . . . sue their customers in class action lawsuits." *Szetela v. Discover Bank*, 97 Cal.App.4th 1094, 1101, 118 Cal. Rptr.2d 862 (2002). Arizona Plaintiff Slakans did not have the opportunity to bargain the terms since the class action waiver is part of a contract offered on a take-it-or-leave-it basis. Further, given the amount of actual damages involved in consumer fraud claims alleging unfair liquidated damages, it is more than likely that "relatively few, if any, customers will seek legal remedies, and that any remedies obtained will only pertain to that single customer without collateral estoppel effect." *Id.* at 1101, 118 Cal.Rptr.2d 862. Thus, the class action waiver provision virtually shields DirecTV from all illegal penalty claims, "essentially grant[ing] itself a license to push the boundaries of good business practices to their furthest limits." *Id.*

Further, the Class Action Waiver directly contravenes the public policy in Arizona's Consumer Fraud Act: "to counteract the disproportionate bargaining power often present in consumer transactions," *Waste Mfg. & Leasing Corp. v. Hambicki*, 183 Ariz. 84, 900 P.2d 1220, 1224 (Ariz. App.Ct.1995), because "the only possible device which would afford relief to . . . plaintiffs with small claims would be a . . . class action." *Godbey v. Roosevelt School Dist. No. 66 of Maricopa County*, 131 Ariz. 13, 638 P.2d 235, 240 (Ariz.App.Ct.1981) (quoting *Lennon v. First National Bank of Arizona*, 21 Ariz.App. 306, 518 P.2d 1230, 1235 (1974)).

Accordingly, the Court finds that an Arizona court would likely find that this particular Arbitration Clause and Class Action Waiver are unenforceable. Accordingly, DirecTV's Motion to Compel is DENIED as to Arizona Plaintiff Slokens.

### 2.2.2 Florida Plaintiffs Boshnack and Johannes

 Under Florida law, "neither the statutes validating arbitration clauses nor the policy favoring such provisions should be used as a shield to block a party's access to a judicial forum in every case." *Global Travel Mktg., Inc. v. Shea*, 908 So.2d 392, 397 (Fla.2005) (citation omitted). A contract is unconscionable under Florida law if it is both procedurally and substantively unconscionable. *Gainesville Health Care Ctr., Inc. v. Weston*, 857 So.2d 278, 284 (Fla. 1st DCA 2003).

 Under Florida law, procedural unconscionability exists when the complaining party lacked a "meaningful choice" about whether or not to enter into the agreement. *Gainesville*, 857 So.2d at 284. Florida courts consider various factors to determine procedural unconscionability, including: (1) The complainant's age, education, intelligence, and business experience, (2) the parties' relative bargaining power; (3) who drafted the contract; (4) whether the terms were explained to the complainant; (5) whether the terms were hidden in a "maze of fine print;" (6) whether changes could be made to the contract; and (7) whether the complainant had a reasonable opportunity to understand the contract terms. *Fotomat Corp. of Fla. v. Chanda*, 464 So.2d 626, 629 (Fla. 5th Dist.Ct.App.1985). Further, a contract of adhesion is a "strong indicator that the contract is procedurally unconscionable because it suggests an absence of meaningful choice." *Gainesville*, 857 So.2d at 285.

 Several factors here point to a finding that the Customer Agreement's Arbitration Clause and Class Action Waiver are procedurally unconscionable under Florida law. First, the relationship between DirecTV and its customers is governed by its boiler plate, "take it or leave it," customer agreement. (*See* Declaration of Valarie W. McCarthy supporting DirecTV's Motion ("McCarthy Decl.") ¶ 5.) Second, DirecTV's policy of executing its customer agreement by sending it with the customers' first bill, (McCarthy Decl. ¶ 5), results in customers not being aware of material terms of the agreement, including the Arbitration Clause and Class Action Waiver, until after their service has been activated. (SAC ¶ 61; *see also* Declaration of Kristen E. Law ("Law Decl."), Exs. 4–6 (Boshnack, Johannes, and O'Brien Declarations).) Third, DirecTV reserves the right to change any of the terms of the agreement, including the arbitration agreement, any time it chooses, but does not give customers the same right. (SAC, Ex. 1, § 4.)

Finally, "an adhesion contract is defined as a standardized contract form offered to consumers of goods and services on essentially a 'take it or leave it' basis without affording [the] consumer a realistic opportunity to bargain." *Powertel, Inc. v. Bexley*, 743 So.2d 570, 574 (Fla. 1st DCA 1999). Under this definition, it is likely that Florida courts would find that the Arbitration Clause and Class Action Waiver are contracts of adhesion. Accordingly, there is a "strong indicator" that the clauses here are procedurally unconscionable, especially when combined with the other factors.

DirecTV's arbitration clause fails to give consumers a meaningful choice, is not presented to customers until after they are subject to the Cancellation Fee, does not give consumers any bargaining power and includes terms far more favorable to DirecTV. Looking at all of these factors, DirecTV's arbitration clause satisfies the test for procedural unconscionability under Florida law. *See Powertel, Inc.*, 743 So.2d at 574–75 (arbitration clause unilaterally prepared and sent as an insert to monthly

telephone bill procedurally unconscionable where customers may suffer inconvenience and expense to switch service providers). Thus, under Florida law, the Customer Agreement's Arbitration Clause and Class Action Waiver are procedurally unconscionable.

Under Florida law, a contract term is substantively unconscionable when the terms are unreasonable and unfair. *Powertel*, 743 So.2d at 574; *see also Kohl v. Bay Colony Club Condominium, Inc.*, 398 So.2d 865, 868 (Fla. 4th Dist.Ct.App.1981). An agreement that requires customers to give up legal remedies indicates substantive unconscionability. *Powertel*, 743 So.2d at 576 (arbitration clause effectively removed the defendant's exposure to any remedy that could be pursued on behalf of a class of consumers.) Here, the effort and cost of investigating, initiating, arbitrating, and proving a claim like this one against DirecTV is greater than any one claimant's individual stake in the outcome. Absent the class mechanism, customers may have difficulty obtaining legal representation, especially in cases like this one where the actual damages are fairly small. (*See* Law Decl., Ex. 7 (Clark Decl.) ¶ 10 ("My understanding is that the individual damages of [the Florida Plaintiffs] are less than $500 each. These amounts are too small for even a consumer law specialist like me to consider litigating such a claim on behalf of an individual consumer.... The reason is simple economics: the cost of litigation, especially against a large corporation, is far too high to allow me ... to represent an individual consumer with a claim so small.").) Thus, Florida courts would find this particular Arbitration Clause and Class Action Waiver to be substantively unconscionable.

In sum, the Arbitration Clause and Class Action Waiver are both procedurally and substantively unconscionable under Florida law. Accordingly, DirecTV's Mo-

tion to Compel is DENIED as to Florida Plaintiffs Johannes and Boshnack.

### 2.2.3 Louisiana Plaintiffs Wilson and Jones

■ Under Louisiana law, a contract term will be deemed unconscionable if it possesses features of both adhesive formation and unduly harsh substance. *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 166–68 (5th Cir.2004).

■ Here, the Court does not reach the question of whether the formation of the Customer Agreement was adhesive because the Court finds that Louisiana courts would not deem the Arbitration Clause and Class Action Waiver to be unduly harsh. In *Iberia Credit*, for example, the Fifth Circuit upheld an arbitration provision that barred class action procedures. *Iberia Credit*, 379 F.3d at 174–75. In so doing, the court observed that "the fact that certain litigation devices may not be available in an arbitration is part and parcel of arbitration's ability to offer simplicity, informality, and expedition, characteristics that generally make arbitration an attractive vehicle for the resolution of low-value claims." *Id.* at 174 (internal quotations and citations omitted); *see also O'Quin v. Verizon Wireless*, 256 F.Supp.2d 512, 518–20 (M.D.La.2003) (applying Louisiana law and rejecting unconscionability challenge to class waiver provision).

Further, Louisiana's consumer protection statute, LUTPA, does not permit consumers to bring class actions, a fact that "significantly diminish[es]" the argument that class waivers are unconscionable under Louisiana law. *Iberia Credit*, 379 F.3d at 175 (citing La. Rev. Stat. § 51:1409(A)). Louisiana has made a policy decision that it does not consider unconscionable a consumer's inability to bring a class action. As the *O'Quin* court noted, the "policy reason[s] for finding [an] arbitration agreement unenforceable because it pre-

cludes class actions have essentially been considered by Louisiana's legislature and rejected when the legislature declined to permit class actions under the [LUTPA]." *O'Quin*, 256 F.Supp.2d at 520.

Because Louisiana would likely enforce the Arbitration Clause and Class Action Waiver, DirecTV's Motion is GRANTED as to Louisiana Plaintiffs Wilson and Jones.

### 2.2.4 New York Plaintiff Folkerth

■ New York courts apply a two-part test to determine unconscionability of a contract. *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 537 N.Y.S.2d 787, 534 N.E.2d 824, 828 (1988). The party seeking to invalidate a contract on unconscionability grounds must establish that (1) he lacked a meaningful choice in entering the contract; and (2) that the contract terms were unreasonably favorable to the other party. *Id.*

New York courts have found on facts similar to facts before this Court that plaintiffs did not demonstrate substantive or procedural unconscionability. *E.g., Ranieri v. Bell Atlantic Mobile*, 304 A.D.2d 353, 759 N.Y.S.2d 448, 449 (2003); *Brower v. Gateway 2000, Inc.*, 246 A.D.2d 246, 676 N.Y.S.2d 569, 572–573 (1998). Further, New York courts routinely enforce arbitration clauses with class action waivers. *See, e.g., Ranieri*, 759 N.Y.S.2d at 449; *Tsadilas v. Providian Nat'l Bank*, 13 A.D.3d 190, 786 N.Y.S.2d 478, 480 (2004); *Hayes v. County Bank*, 26 A.D.3d 465, 811 N.Y.S.2d 741 (2006).

Plaintiff Folkerth concedes that if New York law applies, it is likely that the arbitration clause and class waiver would be enforced, despite the fact that New York consumers are unlikely to seek redress on an individual basis. Because Plaintiffs also concede that the law of the state where the lawsuit was filed applies to the enforcement of the Arbitration Clause and Class Action waiver, DirecTV's Motion to Compel is GRANTED as to New York Plaintiff Folkerth.

### 2.2.5 Pennsylvania Plaintiff Smith

■ Under Pennsylvania law, "a contract or term is unconscionable, and therefore avoidable," if the party opposing enforcement proves that the contract is both procedurally and substantively unconscionable. *Salley v. Option One Mort. Corp.*, 592 Pa. 323, 925 A.2d 115, 119 (2007).

A "lack of meaningful choice," or "procedural unconscionability," is generally found "where there is a contract of adhesion—a contract prepared by a party with excessive bargaining power and presented to the other party on a 'take it or leave it basis.'" *Hopkins v. New Day Financial*, 643 F.Supp.2d 704, 716–17 (E.D.Pa.2009) (*citing Denlinger, Inc. v. Dendler*, 415 Pa.Super. 164, 608 A.2d 1061, 1068 (1992)). "[W]here the arbitration clause is contained in an adhesion contract and unfairly favors the drafting party, such clauses are unconscionable and must be deemed unenforceable." *Thibodeau v. Comcast Corp.*, 912 A.2d 874, 880 (Pa.Super.Ct.2006).

■ Here, the arbitration provisions are drafted by DirecTV, and contained in a pre-printed, standard form agreement that does not require review or signature of the customer. A customer cannot negotiate its terms, and it is presented in a "take it or leave it" manner. *See Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 266 (3d Cir.2003) ("Because plaintiffs had no real choice but to accept these terms, they have established the existence of procedural unconscionability."). Further, customers do not even see the arbitration provisions (if at all) until after the contractual service has begun, because the agreement comes with their first bill, after service starts. *E.g., Hopkins*, 643 F.Supp.2d at 718 (agreement procedurally unconscionable in part because "they were not given a copy of the document at the time of signing and

none of them were able to consult with counsel"). A Pennsylvania court would likely find that the Arbitration Clause and Class Action Waiver are procedurally unconscionable.

"Substantive unconscionability" refers to whether the contractual terms are unreasonably favorable to one side and to which the disfavored party does not assent. *Huegel v. Mifflin Const. Co.*, 796 A.2d 350, 357 (Pa.Super.Ct.2002). In determining whether a provision is unreasonable, a court can consider its public policy ramifications. *Salley*, 925 A.2d at 120 n. 3.

Here, the Arbitration Clause does not bind DirecTV in the same way it does consumers. The contract permits DirecTV to pursue litigation and "selfhelp" remedies that customers may not. For example, DirecTV may sue customers who allegedly violate commercial viewing restrictions. (SAC, Ex. 4, at § 1(h); § 9(d).) DirecTV also reserves the right to deduct money over disputed bills from consumers' bank accounts. (SAC, Ex. 4, § 5(e).) Meanwhile, customers who dispute charges must resort to individual arbitration to get their money back.

DirecTV argues that under *Salley*, 925 A.2d 115, the Arbitration Clause and Class Action Waiver should be enforced. But although the *Salley* court held that a "splitforum" contract such as DirecTV's is not *per se* unconscionable, the Court relied on the "facially apparent business justification" and "sound pragmatic and policy reasons" for both parties to except certain disputes from arbitration. *Id.* at 128. Pennsylvania courts have not accepted that rationale in the consumer class action context. *See, e.g., Hopkins,* 643 F.Supp.2d at 720 (no "valid business justification," for the onesided access); *Thibodeau,* 912 A.2d at 883 (striking arbitration clause and class waiver because there was no "assent," and "it was unconscionable to require individual arbitration and preclude class action

litigation if the costs of arbitration effectively prevented an individual from pursuing a claim" in consumer class action). And many courts applying Pennsylvania law have held that limiting the use of the class action vehicle qualifies as substantively unconscionable. *See, e.g., Id.* at 886; *McNulty v. H & R Block,* 843 A.2d 1267, 1268 (Pa.Super.Ct.2004).

In sum, the Court finds that a Pennsylvania court would likely hold that the Arbitration Clause and Class Action waiver are both procedurally and substantively unconscionable. Accordingly, DirecTV's Motion to Compel is DENIED as to Pennsylvania Plaintiff Smith.

2.2.6 South Carolina Plaintiff McBroom

■■■ Like Louisiana, South Carolina's legislature has made a policy decision that it does not consider unconscionable a consumer's inability to bring a class action. *See* S.C.Code Ann. § 39–5–140(a) (Under South Carolina's Unfair Trade Practices Act, "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful [under the unfair competition law] may bring an action individually, but not in a representative capacity, to recover actual damages."). The Court finds that South Carolina would likely enforce the Arbitration Clause and Class Action Waiver, so DirecTV's Motion is GRANTED as to South Carolina Plaintiff McBroom.

**2.3 Conclusion**

California policy favors applying California law when the plaintiff files a nationwide putative consumer class action against a California defendant. Further, California law disfavors class action waivers, and by the terms of the Arbitration Clause, it is not enforceable if the class action waiver is not enforceable. Accord-

ingly, as to the Plaintiffs who originally filed in California, Florida Plaintiffs O'Brien and Lombardi, Illinois Plaintiff Schuessler, and Virginia Plaintiffs the Pifers, DirecTV's Motion to Compel is DENIED.

Because the Arbitration Clause and Class Action Waiver would not be enforced in the home states where Arizona Plaintiff Slakans, Florida Plaintiffs Boshnack and Johannes, Louisiana Plaintiffs Wilson and Jones, New York Plaintiff Folkerth, and Pennsylvania Plaintiff Smith filed their lawsuits, DirecTV's Motion to Compel as to those Plaintiffs is DENIED.

Finally, because New York Plaintiff Folkerth, South Carolina Plaintiff McBroom, and Louisiana Plaintiffs Wilson and Jones filed their lawsuits in states that would enforce the Arbitration Clause and Class Action Waiver, DirecTV's Motion to Compel as to those Plaintiffs is GRANTED.

### 3. MOTION TO DISMISS CLAIMS UNDER 12(b)(6)

#### 3.1 Legal Standard Under 12(b)(6)

A court should dismiss a complaint when its allegations fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). " '[D]etailed factual allegations' are not required." *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The Court must accept as true all factual allegations in the complaint and must draw all reasonable inferences from those allegations, construing the complaint in the light most favorable to the plaintiff. *Pollard v. Geo Group, Inc.*, 607 F.3d 583, 585 n. 3 (9th Cir.2010); *Westlands Water Dist. v. Fire-*baugh Canal, 10 F.3d 667, 670 (9th Cir. 1993).

But the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.' " *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1940 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). A court should not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," *Iqbal*, 129 S.Ct. at 1940, or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001). Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies of the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir.2003).

#### 3.2 Non–California Plaintiffs' Fourth Through Sixth Claims, For Violations Of California Consumer Protection Laws

Plaintiffs' fourth through sixth claims are for violations of California Consumer Protection Laws. DirecTV moves to dismiss these claims as to all Plaintiffs except the California Plaintiffs ("the Non–California Plaintiffs"). DirecTV argues that because the Customer Agreement included the Choice of Law Clause specifying that the law of the Plaintiffs' home states should apply, the Non–California Plaintiffs cannot sue under California law. The Court disagrees, and finds that California has the greatest interest in having its laws apply here, regardless of which states' choice of law rules apply.

### 3.2.1 California choice of law analysis

■ Florida Plaintiffs O'Brien and Lombardi, Illinois Plaintiff Schuessler, New Jersey Plaintiffs the Murrays, Oregon Plaintiffs Forbes and Wilson, and Virginia Plaintiffs the Pifers all originally filed their lawsuits in California. The parties agree that California's choice of law rules apply to these Plaintiffs. *See also In re Nucorp Energy Sec. Litig.*, 772 F.2d 1486, 1492 (9th Cir.1985).

In deciding whether to enforce a contractual choice of law provision, California courts follow *Restatement (Second) of Conflict of Laws* § 187(2) (1971) ("Section 187(2)"). Under Section 187(2), the court must first determine "whether the chosen state has a substantial relationship to the parties or their transaction, or ... whether there is any other reasonable basis for the parties' choice of law." *Nedlloyd Lines B.V. v. Sup. Ct.*, 3 Cal.4th 459, 466, 11 Cal.Rptr.2d 330, 834 P.2d 1148 (1992).

The parties agree that all Plaintiffs have a substantial relationship with their home states. Because the first requirement is satisfied, the second inquiry is whether the "chosen state's law is contrary to a *fundamental* policy of California." *Id.* (emphasis in original). If so, "the court must then determine whether California has a 'materially greater interest than the chosen state in the determination of the particular issue....'" *Id.* (citation omitted). The Court finds that the Non–California Plaintiffs have established that their home state laws conflict with fundamental policies of California and that California has a materially greater interest here.

While there is no bright line definition of what constitutes a fundamental policy, a fundamental policy may be "embodied in a statute which makes one or more kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining power." *Restatement* § 187 comment g. Here, California Civil Code § 1671(d), which also underlies Plaintiffs' UCL and CLRA claims, reflects California's fundamental policy to protect consumers against the oppressive use of liquidated damages clauses by parties with superior bargaining power. Under Civil Code § 1671, a liquidated damages clause in a retail purchase or rental contract for personal, family or household purposes is void unless it is "impracticable or extremely difficult to fix the actual damage." Civil Code § 1671(c), (d); *see also Ballard v. Equifax Check Serv.*, 158 F.Supp.2d 1163, 1174 (E.D.Cal.2001). The proponent of the liquidated damages clause has the burden of proof. *Id.*; *Ballard*, 158 F.Supp.2d at 1173.

California Civil Code § 1671(d) is based on the December 1973 recommendation by the California Law Revision Commission (the "Commission"). *Recommendation and Study Relating to Liquidated Damages*, 11 Cal. L. Revision Comm'n Reports 1201 (1973); *Guthman v. Moss*, 150 Cal. App.3d 501, 510, 198 Cal.Rptr. 54 (1984). In its recommendation, the Commission stated that while liquidated damages may serve useful and legitimate functions, there are inherent dangers in their use:

> There is the risk that a liquidated damages provision will be used oppressively by a party able to dictate the terms of the agreement. And there is the risk that such a provision may be used unfairly against a party who does not fully appreciate the effect of the provision. The Commission believes that the use of liquidated damages provisions is beneficial and should be encouraged, subject to limitations to protect against the oppressive use of such provisions.

11 Cal. L.Rev. Comm'n at 1209.

The Court finds that the policy embedded in California Civil Code § 1671(d), including the policy of shifting the burden of proof to the proponent of the liquidated

damages clause, is fundamental California policy. *See also It's Just Lunch Int'l LLC,* No. EDCV 08–367–VAP, 2008 WL 4683637, at *3 (C.D.Cal. Oct. 21, 2008) (holding that California's Franchise Investment Law expressed a fundamental policy because it was intended to protect franchisees against franchisors who may have superior bargaining power); *see also DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden,* 448 F.3d 918, 926 (6th Cir.2006) (holding that statutes that specifically place the burden of proof on a particular party reflect a fundamental policy that is substantial).

Florida, Illinois, New Jersey, Oregon, and Virginia do not have statutes protecting consumers from liquidated damages clauses that are comparable to California Civil Code § 1671(d). Further, these states clearly place the burden of proving the invalidity of liquidated damages on the challenger, regardless of whether the contract is for personal services or property. *Hutchison v. Tompkins,* 240 So.2d 180, 186–87 (Fla.App.1970) (liquidated damages clauses are presumed valid and not a penalty); *Pav–Saver Corp. v. Vasso Corp.,* 143 Ill.App.3d 1013, 97 Ill.Dec. 760, 493 N.E.2d 423, 427 (1986) (the burden of proving that liquidated damages clause is void as penalty rests with party resisting its enforcement); *Wasserman's v. Township of Middletown,* 137 N.J. 238, 253, 645 A.2d 100 (1994) (challenger of liquidated damages clause bears burden of proving invalidity); *LTR Rental Co. v. Simmons,* 40 Or.App. 577, 580, 595 P.2d 1283 (1979) (challenger of liquidated damages clause bears burden of proving invalidity); *O'Brian v. Langley School,* 256 Va. 547, 551, 507 S.E.2d 363 (1998) (in a contract for school tuition, the party challenging the validity of the liquidated damages provision has the burden of proof). Accordingly, Florida, Illinois, New Jersey, Oregon, and Virginia law conflict with California's fundamental policies embodied in Civil Code § 1671(d).

The next step in the choice of law analysis is to "determine whether California has a 'materially greater interest than the chosen state in the determination of the particular issue....'" *Nedlloyd,* 3 Cal.4th at 466, 11 Cal.Rptr.2d 330, 834 P.2d 1148 (citation omitted). Here, DirecTV is headquartered in California, maintains its operations in California, and California is where DirecTV formulated its early cancellation fee policies. Plaintiffs all assert claims under California law and the dispute is brought on behalf of a nationwide class. "Because the current dispute is brought as a nationwide class, [none of the individual home states] can claim any special interest in having its laws apply to this dispute; each state in which putative class members reside, whether it is California, [or any individual state], has the same interest is protecting its own residents." *Masters,* at ——, at *1. Further, California has the additional interest in protecting consumers nationwide from misconduct emanating from within California's borders, while the home states of the Plaintiffs do not. Thus, California would be most impaired if its laws did not apply here, and therefore has a materially greater interest than Plaintiffs' home states. *See also, e.g., Wershba v. Apple Computer, Inc.,* 91 Cal.App.4th 224, 242–44, 110 Cal. Rptr.2d 145 (2001) (California law applied to "non-California members of a nationwide class where the defendant is a California corporation and some or all of the challenged conduct emanates from California"); *Mazza v. Am. Honda Motor Co.,* 254 F.R.D. 610, 626–28 (C.D.Cal.2008) (since alleged anti-consumer behavior emanated from California, California laws "may properly apply to benefit of nonresident plaintiffs").

In sum, the home state laws of the Florida, Illinois, New Jersey, Oregon, and Virginia Plaintiffs conflict with a fundamental policy embedded in California law,

and California has a materially greater interest in deciding their claims. Accordingly, DirecTV's Motion to Dismiss the California Consumer Protection Claims is DENIED as to these Plaintiffs.

### 3.2.2 Arizona, Pennsylvania, and Washington choice of law analysis

Like California courts, Arizona, Pennsylvania, and Washington courts follow the Restatement § 187(2) to determine whether a contractual choice of law clause should be enforced. *See Cardon v. Cotton Lane Holdings, Inc.,* 173 Ariz. 203, 841 P.2d 198, 202 (1992); *O'Brien v. Shearson Hayden Stone, Inc.,* 90 Wash.2d 680, 586 P.2d 830, 833–34 (1978); *Kruzits v. Okuma Mach. Tool, Inc.,* 40 F.3d 52, 55 (3rd Cir.1994) (Pennsylvania).

 Enforcing DirecTV's choice of law clause as to the Arizona, Pennsylvania, and Washington would be contrary to fundamental policies of California. Unlike California law, liquidated damages clauses are presumed to be valid in Arizona, Washington, and Pennsylvania. In determining whether a liquidated damages clause is enforceable, all three states have enacted identical liquidated damages statutes which follow the Uniform Commercial Code § 2–718 and the Restatement (Second) of Contracts § 356. Under this approach, damages for a breach may be liquidated, "but only at an amount that is reasonable in light of the anticipated or actual loss caused by the breach, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy. A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty." *See* Ariz. Rev. Stat. § 47–2718(A); Wash. Rev. Code § 62A.2–718; 13 Pa. Cons. Stat. Ann. § 2718. Under this test, liquidated damages clauses are presumed valid, regardless of whether the parties had unequal bargaining power.

*See, e.g., Perry v. Moran,* 111 Wash.2d 885, 766 P.2d 1096, 1096 (Wash.1989) ("Washington law favors the enforcement of a liquidated damages clause."); *Buchanan v. Kettner,* 97 Wash.App. 370, 984 P.2d 1047, 1048 (Div. 2 1999) (upholding liquidated damages clause against tenant, noting that "[a] clause setting liquidated damages is favored"); *Roscoe–Gill v. Newman,* 188 Ariz. 483, 937 P.2d 673, 675 (Ariz.App. Div. 2 1996) ("When liquidated damages are specified in a contract, the terms of the contract generally control.") (citations omitted). Thus, a party that is seeking a determination that a liquidated damages clause is void as a penalty and is unenforceable has the burden of proof. This conflicts with California's fundamental policy of protecting consumers with unequal bargaining power by presumptively voiding liquidated damages clauses in consumer contracts.

 The Court finds that the materially greater interest analysis does not change when the plaintiff originally filed in a different state. When the sole defendant is a California corporation and has its headquarters in California, and a plaintiff asserts claims on behalf of a nationwide putative class, California has a greater interest than any other state. *See* Section 2.1.1.

Because Arizona, Washington, and Pennsylvania law conflicts with California's fundamental policy, and because California has the materially greater interest, California law applies to these Plaintiffs.

### 3.2.3 Florida choice of law analysis

 Florida uses a choice of law analysis similar to Section 187. In Florida, courts consider whether a choice of law clause would violate the public policy of the state with the materially greater interest. *See Merriman v. Convergent Business Systems, Inc.,* No. 90–30138–LAC, 1993 WL 989418, *5 (N.D.Fla.) ("exception to the normal enforcement of the parties'

contractual choice of law is analogous to standards set out in § 187 of the Restatement").

Again, when the sole defendant is a California corporation and has its headquarters in California, and a plaintiff asserts claims on behalf of a nationwide putative class, California has a greater interest than any other state. *See* Section 2.1.1. Accordingly, under the Florida choice of law analysis, the Court must determine whether the Choice of Law Clause violates the public policy of California. The Court finds that it does.

Application of Florida law would violate California's public policies because Florida does not have statutes protecting consumers similar to that of Section 1671(d), and instead places the burden of proof on the challenger of a liquidated damages clause. *See Hutchison,* 240 So.2d at 186–187 (liquidated damages clauses are presumed valid and not a penalty).

Because California has the materially greater interest, and because the choice of law clause would violate California public policy, Florida and South Carolina courts would not enforce the Choice of Law Clause.

### 3.2.4 Conclusion

After examining the choice of law analysis in all states where remaining Plaintiffs filed lawsuits, the Court finds that the home states' laws conflict with fundamental California policies and that California has the greatest interest in having its laws applied to these cases. Accordingly, DirecTV's Motion to Dismiss is DENIED as to the California Consumer Protection Claims as pled by the Non–California Plaintiffs.

### 3.3 Plaintiffs' Sixth Claim, For Invalid Liquidation Damages In Violation Of Cal. Civil Code § 1671.

 Plaintiffs' sixth claim is for invalid liquidation damages in violation of Califor-

nia Civil Code § 1671. To state a claim that a liquidated damages provision is void under California Civil Code § 1671(d), the plaintiff must allege that the imposition of the liquidated damages provision arises from a breach of contract and that the liquidated damages amount is a fixed and certain sum. *Ruwe v. Cellco P'ship,* 613 F.Supp.2d 1191, 1196 (N.D.Ca.2009); *see also* Cal. Civ. Code § 1671; *Garrett v. Coast & S. Fed. Sav. & Loan Ass'n,* 9 Cal.3d 731, 738 n. 6, 108 Cal.Rptr. 845, 511 P.2d 1197 (1973).

Defendant argues that the Cancellation Fee is not a liquidated damages provision, but merely an alternative means of performing the contract, and that the claim should therefore be dismissed. The Court disagrees. The facts pled in the SAC are sufficient to state a claim for unlawful liquidated damages.

Plaintiffs specifically allege: (1) a Cancellation Fee was charged to Plaintiffs when they, and other consumers like them, cancelled their service (SAC ¶¶ 11–36, 44); (2) it "is neither impractical nor extremely difficult for DirecTV to determine the actual amount of damages occasioned by" the cancellation (SAC ¶ 138); (3) the Cancellation Fee "bear[s] no reasonable relationship to the actual costs incurred by DirecTV when customers cancel their service" (SAC ¶ 139); and (4) "the Cancellation Fee is intended as a penalty to dissuade Class members from cancelling DirecTV's services" (SAC ¶ 139). Although the Court may decide whether the Cancellation Fee is a liquidated damages provision or merely an alternative means of performance, the Court finds that this decision is best left to summary judgment or trial, after the facts are more fully developed.

Thus, DirecTV's Motion to Dismiss is DENIED as to Plaintiffs' liquidated damages claims.

### 3.4 Plaintiffs' Second Claim, For Violation Of The EFTA

Plaintiffs' second claim is for violation of the EFTA. Plaintiffs Van Meter, O'Brien, and Johannes allege that DirecTV violated Section 1693e of the EFTA by charging early cancellation fees to these Plaintiffs' debit cards without obtaining their signatures or providing statutory notice.

Section 1693e only requires a signed writing and notice for "preauthorized electronic fund transfer[s]." 15 U.S.C. §§ 1693e(a), (b). But "the term 'preauthorized electronic fund transfer' means an electronic fund transfer authorized in advance to recur at substantially regular intervals." 15 U.S.C. § 1693a(9). To qualify as a preauthorized transfer and trigger the requirements of the EFTA, the transfer must be one that is authorized to "recur." The authorization DirecTV obtains for a one-time charge of the Cancellation Fee does not fit within that definition, and a signed writing is thus not required. *See, e.g.,* Oh. Consumer L. § 23:37 (2009) (EFTA provisions relating to preauthorized transfers "do not apply to payday loans where there will only be one payment").

In the Opposition, Plaintiffs argue that they "are entitled to seek discovery concerning DirecTV's use of customers' debit cards" because "recurring and automatic payment methods clearly fall within the preauthorized transfer provision of 15 U.S.C. § 1693." (Opp'n 71–72.) But this argument does not defeat the fact that on the face of the SAC, there are no allegations of recurring automatic payments in violation of EFTA.

Accordingly, DirecTV's Motion is GRANTED as to Plaintiffs' EFTA claim.

### 3.5 Plaintiffs' Third Claim, For Violation Of The FCA

Plaintiffs' third claim is for violation of the FCA. Plaintiffs concede that their claim under the FCA should be dismissed. (Opp'n 49, n. 27.) Accordingly, DirecTV's Motion is GRANTED as to Plaintiffs' third claim.

### 3.6 Plaintiffs' Nineteenth Claim, For Unjust Enrichment

 Plaintiffs' nineteenth claim is for unjust enrichment. DirecTV moves to dismiss the unjust enrichment claim on the ground that California does not recognize a claim for unjust enrichment. The Court agrees.

There is some disagreement among California courts about whether unjust enrichment is an independent claim. *See Falk v. Gen. Motors Corp.,* 496 F.Supp.2d 1088, 1098–99 (N.D.Cal.2007) (noting that California courts "appear to be split on whether unjust enrichment can be an independent claim or merely an equitable remedy"). This Court has previously held that unjust enrichment is not an independent claim. *See, e.g., Olenicoff v. UBS AG,* SACV 08–1029 AG (RNBx), Order Granting in Part and Denying in Part SES Defendants' Motion to Dismiss, at 17–18 (July 31, 2009). Other cases reaching the same conclusion are persuasive. *See, e.g., Lauriedale Associates, Ltd. v. Wilson,* 7 Cal.App.4th 1439, 1448, 9 Cal.Rptr.2d 774 (1992) ("Unjust enrichment does not describe a theory of recovery, but an effect . . . ."); *Dinosaur Dev., Inc. v. White,* 216 Cal.App.3d 1310, 1315, 265 Cal.Rptr. 525 (1989) (unjust enrichment is a "general principle underlying various legal doctrines and remedies," rather than a remedy itself); *Walker v. USAA Cas. Ins. Co.,* 474 F.Supp.2d 1168, 1174 (E.D.Cal.2007) ("There is no cause of action in California for unjust enrichment."). Accordingly, the Court holds that the California Supreme Court would most likely find that unjust enrichment is not an independent claim.

Thus, DirecTV's Motion as to Plaintiffs' nineteenth claim is GRANTED.

### 3.7 Plaintiffs' Eighteenth Claim, For Money Had And Received

DirecTV moves to dismiss Plaintiffs' Eighteenth claim, for money had and received, as to Plaintiffs McBroom, Slakans, Boshnack, and Twyman. Under California law, "[a] cause of action is stated for money had and received if the defendant is indebted to the plaintiff in a certain sum 'for money had and received by the defendant for the use of the plaintiff.'" *Schultz v. Harney*, 27 Cal.App.4th 1611, 1623, 33 Cal.Rptr.2d 276 (1994). DirecTV argues that these Plaintiffs failed to allege that DirecTV actually received the Cancellation Fee from these Plaintiffs.

■ DirecTV is correct that Plaintiffs McBroom, Slakans, and Twyman have not alleged that DirecTV received the Cancellation Fee from them. Plaintiff Boshnack, on the other hand, alleged that he "pays a higher monthly service charge than he agreed to pay at the time he subscribed." (SAC ¶ 18.) Plaintiff Boshnack's allegations are sufficient to state a claim for money had and received. The Motion to Dismiss is GRANTED with leave to amend as to Plaintiffs McBroom, Slakans, and Twyman, and DENIED as to Plaintiff Boshnack.

### 3.8 Plaintiffs' Seventh Through Seventeenth Claims, For Violation Of Consumer Protection Laws Of Each Plaintiffs' Home State, And Twentieth Claim, For Relief Of Unlawful Penalties

Plaintiffs assert claims Seven through Seventeen "in the alternative" and only "[t]o the extent that California law is ruled inapplicable to non-California resident Plaintiffs." (SAC ¶ 143.) Because the Court finds that the remaining Plaintiffs may assert the California Consumer Protection Claims, the Court GRANTS DirecTV's Motion as to claims Seven through Seventeen and DISMISSES these claims.

Likewise, Plaintiffs allege the twentieth claim, for relief of unlawful penalties, "for the purpose of protecting and preserving non-California resident class members' claims under the laws of their home states." (Opp'n 73:27–28.) Because the home state laws do not apply, the Court GRANTS DirecTV's Motion to Dismiss as to the twentieth claim.

### 3.9 Leave To Amend

The Court finds that Plaintiffs' claims for violation of the EFTA and for money had and received could possibly be cured by amendment, so Plaintiffs may amend as to those claims. *See Jackson*, 353 F.3d at 758. At oral argument, Plaintiffs' counsel stated that if the Court kept the result of its tentative, it would not amend. Accordingly, where the motion is granted, it is without leave to amend.

### 3.10 Extension Of Time To Answer Complaint

Under Federal Rule of Civil Procedure 15(a)(3), unless a court orders otherwise, an answer to an amended complaint must be made either "within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later." The Court recognizes that this case is complicated and the complaint is lengthy. The Court anticipates that the parties will either move or stipulate to extend the time to answer. To save the parties from having to file such motions and stipulations, on its own motion, the Court ORDERS that DirecTV's answer is due October 4, 2010.

### DISPOSITION

DirecTV's Motion to Compel Arbitration is GRANTED as to Plaintiffs Folkerth, McBroom, Wilson, and Jones. The Motion

to Compel is DENIED as to all other Plaintiffs.

DirecTV's Motion to Dismiss under Rule 12(b)(6) is GRANTED as to Plaintiffs' second, third, and seventh through twentieth claims, and DENIED as to the remaining claims.

IT IS SO ORDERED.